MICHAEL EXLEY *v.* CONNECTICUT YANKEE
GREYHOUND RACING, INC.
(AC 18841)

O'Connell, C. J., and Landau and Spear, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 24—officially released August 8, 2000

*Emanuel N. Psarakis*, with whom, on the brief, was *Richard F. Vitarelli*, for the appellant-appellee (defendant).

*Raymond F. Parlato*, for the appellee-appellant (plaintiff).

*Opinion*

SPEAR, J. The defendant, Connecticut Yankee Greyhound Racing, Inc. (Yankee), appeals from the judgment of the trial court granting, in part, its application to vacate an arbitration award issued in favor of its former employee, the plaintiff Michael Exley. The plaintiff cross appeals from the judgment of the trial court granting, in part, his application to confirm the arbitra-

tion award. On appeal, Yankee claims that the trial court improperly failed to vacate the entire award because (1) the award did not conform to the parties' submission and (2) the arbitrator exceeded his authority in issuing the award.[2] The plaintiff claims in his cross appeal that the court improperly failed to confirm the entire award because after determining that the submission was voluntary and unrestricted, the court improperly substituted its findings of fact and conclusions of law for those of the arbitrator. We affirm the judgment in part and reverse it in part.

The arbitrator found the following facts. Yankee entered into an employment agreement (Yankee agreement) with the plaintiff on April 15, 1995, under which the plaintiff was to act as racing secretary for a period of three years subject to earlier termination for cause pursuant to the terms of the agreement. The plaintiff also entered into an employment agreement with Plainfield Pets Program, Inc. (Plainfield Pets), a separate, nonprofit entity. The term of that agreement (Plainfield Pets agreement) was to coincide with the term of the Yankee agreement. Under the Plainfield Pets agreement, the plaintiff was to act as its president.

Plainfield Pets terminated the plaintiff under its employment agreement, and subsequently the plaintiff was terminated from his employment under the Yankee

---

[2] These two claims encompass the following six claims raised by Yankee in its brief: (1) the court should have vacated the entire award; (2) the parties' submission to the arbitrator was restricted; (3) the arbitrator's entire award exceeded the scope of the parties' submission; (4) even assuming arguendo that the parties' submission to the arbitrator was unrestricted, the arbitrator exceeded his authority in rendering the award; (5) the court improperly failed to vacate the award in its entirety as the arbitrator's excess of authority could not be limited to a portion of the award without doing injustice to Yankee; and (6) because the court found that the arbitrator exceeded his authority by rewriting the parties' agreements, it improperly failed to vacate the entire award and upheld the award in light of an inappropriate legal standard.

agreement. A dispute arose between Yankee and the plaintiff over his termination, and, pursuant to a provision in the Yankee agreement, that dispute was submitted to arbitration.[3] Plainfield Pets was not named as a party to the arbitration, nor was it a party before the trial court.[4] The arbitrator found that Yankee had terminated both its agreement and the Plainfield Pets agreement without cause in violation of both agreements and ordered Yankee to pay the plaintiff damages under both agreements.

The plaintiff filed an application in the Superior Court to confirm the award, and Yankee filed an application to vacate the award. The court granted in part the plaintiff's application to confirm the arbitration award issued in favor of the plaintiff against Yankee "insofar as it relates to [the plaintiff's] right under the Yankee agreement." The court vacated the "arbitration award, if any, in favor of [the plaintiff] against Plainfield Pets

---

[3] The arbitration provision of the agreement provides: "Any controversy or claim arising out of, or relating to this agreement, or the breach thereof, shall be settled by arbitration in the City of Hartford in accordance with the rules then in existence of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof."

[4] The arbitrator stated the following in his findings with regard to the relationship between Yankee and Plainfield Pets: "It is unclear from the testimony and the remainder of the record in this case what the exact nature of the legal relationship is between Plainfield Pets and Yankee. The evidence on the record indicates, however, that Yankee created Plainfield Pets, Yankee provides a majority of Plainfield Pets' operating funds, Yankee and Plainfield Pets share the same business address, Yankee required [the plaintiff] to comply with the Plainfield Pets Agreement, Yankee terminated the Employment Agreement [the plaintiff] had entered into with Plainfield Pets, and Yankee relied on its determination that [the plaintiff] had materially breached the Plainfield Pets Agreement as one of the grounds for concluding that it had cause to terminate the Yankee Agreement.

"Therefore, the Arbitrator finds that Yankee is an appropriate party against which [the plaintiff] has standing to pursue his claims under the Plainfield Pets Agreement and that [the plaintiff's] failure to name Plainfield Pets Program, Inc., as a party respondent is not fatal to the pursuit of his claims under the Plainfield Pets Agreement."

and the award in favor of [the plaintiff] against [Yankee] insofar as it finds an entitlement in [the plaintiff] growing out of the [Plainfield] Pets agreement." This appeal and the plaintiff's cross appeal followed.

We first address the standard of review of arbitration awards that are challenged pursuant to General Statutes § 52-418 (a) (4).[5] "The scope of judicial review of arbitration awards is very narrow. Our courts favor arbitration as a means of settling differences and uphold the finality of arbitration awards except where an award clearly falls within the proscriptions of § 52-418 of the General Statutes. . . . Subsection (a) (4) of General Statutes § 52-418, the subsection under which the [defendant] pursues its claims of error, provides in part that an award is invalid if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. Generally, any challenge to an award pursuant to General Statutes [§ 52-418 (a) (4)] on the ground that the arbitrators exceeded or imperfectly performed their powers is properly limited to a comparison of the award with the submission. . . . If the award conforms to the submission, the arbitrators have not exceeded their powers." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *Local 818*, 5 Conn. App. 636, 639–40, 502 A.2d 426 (1985).

I

In its appeal, Yankee claims that the trial court improperly failed to vacate the entire arbitration award

---

[5] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or . . . any judge thereof, shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . ."

because the award did not conform to its submission. We do not agree.

To determine whether an arbitration award conforms to the parties' submission to arbitration, we must first determine whether the submission was restricted or unrestricted. "In determining whether a submission is unrestricted, we look at the authority of the arbitrator. The authority of the arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of such qualifications, an agreement is unrestricted. . . . *Perkins & Mario, P.C.* v. *Annunziata*, 45 Conn. App. 237, 239–40, 694 A.2d 1388 (1997). . . . *Hartford* v. *International Assn. of Firefighters, Local 760*, [49 Conn. App. 805, 812, 717 A.2d 258, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998)]." (Internal quotation marks omitted.) *Naek Construction Co.* v. *Wilcox Excavating Construction Co.*, 52 Conn. App. 367, 370–71, 726 A.2d 653 (1999).

The court found the submission by the parties to be unrestricted. We agree with the court. "The arbitration clause in a contract constitutes the written submission to arbitration. *Vail* v. *American Way Homes, Inc.*, 181 Conn. 449, 451, 435 A.2d 993 (1980)." *Fraulo* v. *Gabelli*, 37 Conn. App. 708, 714, 657 A.2d 704 (1995), cert. denied, 239 Conn. 947, 686 A.2d 125 (1996). "The process which governs the confirmation of arbitral awards is well settled by our cases. If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration. *Gores* v. *Rosenthal*, 150 Conn. 554, 557, 192 A.2d 210 (1963); *Batter Building Materials Co.* v. *Kirschner*, 142 Conn. 1, 9, 110 A.2d 464 (1954). This submission can be invoked by a demand for arbitration by one or both parties when a dispute arises. The agreement for submission constitutes the charter

for the entire ensuing arbitration proceedings. *Malecki v. Burnham*, 181 Conn. 211, 213, 435 A.2d 13 (1980); *Ramos Iron Works, Inc. v. Franklin Construction Co.*, 174 Conn. 583, 587, 392 A.2d 461 (1978); *Connecticut Union of Telephone Workers v. Southern New England Telephone Co.*, 148 Conn. 192, 197, 169 A.2d 646 (1961); *Amalgamated Assn. v. Connecticut Co.*, 142 Conn. 186, 191, 112 A.2d 501 (1955)." *Vail v. American Way Homes, Inc.*, supra, 451. The agreement between the plaintiff and Yankee in the present case provided for the arbitration of disputes between the parties and contained no language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review.[6]

At the beginning of the arbitration proceeding, Yankee successfully objected to the plaintiff's proposed submission. The arbitrator allowed the parties to assert their respective views of the issues in their opening statements and in posthearing briefs.[7] Because the par-

---

[6] See footnote 3.

[7] Counsel for the plaintiff stated in his opening statement: "Well it's really quite simple. In April of 1995, [Yankee] and [the plaintiff] entered into an employment contract, which ran for three years. Part and parcel of that contract was that he would not be terminated without cause.

"To date, he has never received—we have never received anything in writing, nor has it ever been conveyed to me orally, nor, to my knowledge, to my client, the specific reason for his termination, what specific acts he performed or failed to perform, that caused his termination from [Yankee]. Therefore, I believe it's in violation of his contract, and the assuming damages from that wrongful termination will be taken and shown through this hearing."

The plaintiff's counsel proposed the following issue in his posthearing brief: "Did [Yankee] breach [the plaintiff's] written employment contract dated April 1, 1995, when it terminated [the plaintiff] on January 21, 1997, without just cause? If so, what shall the remedy be?" In a footnote in that brief, counsel stated: "As the parties could not agree on a submission, it is requested that the arbitrator take the case as an unrestricted submission."

Counsel for Yankee stated in his opening statement: "There are really, from our perspective, two employment agreements that you'll be asked to interpret. One of them, counsel has alluded to, is a six page agreement that was dated April 15, 1995, between the parties, a three year contract. And another one is a one page employment agreement, dated the same day. The

ties could not agree on a submission, the arbitrator ultimately framed the submission[8] as follows: (1) "On what acts and/or omissions was the termination of [the plaintiff's] employment based?" (2) "Was the termination of [the plaintiff's] employment as President of Plainfield Pets and as the Racing Secretary of Yankee a 'termination for cause' as that term is defined in the Plainfield Pets Agreement and the Yankee agreement?"[9]

longer of the contracts deals with the dog track. [Preliminarily], we're talking about the Connecticut Yankee Greyhound Corporation, that's the corporation we're talking about, the dog track, Plainfield Greyhound Park or the dog track. The six page document, which I'm sure will be made an exhibit, was between [the plaintiff] and the dog track [Yankee], and the one page agreement, which resulted in a breach of agreement, was between [the plaintiff] and Plainfield Pets.

"The employment agreement—we're talking about specific terms in both of these employment agreements—the six page employment agreement between the dog track and [the plaintiff], specifically provides that he has certain duties. It specifically provides that he can be terminated with cause without any notice whatsoever, and the agreement, specifically, defines what the cause is, under the agreement. And of course, we're going to introduce evidence that there was just cause. It also talks about one of the reasons of just cause being breach of any other agreement to which [the plaintiff] was a party, and that's why the second agreement becomes relevant, because the agreement he had with Plainfield Pets was also breached from our position. So, we're dealing with those two contracts. For your interpretation, and the definitions of what—we have the benefit, in this case, of having definitions of what is cause, what isn't cause, and so forth.

"Now, as to what was said by counsel, he said nothing has ever been given in writing. Number one, there is no legal requirement to give reasons in writing. Under the contract, there is no requirement to give any notice, whatsoever, but the evidence will show he was given reasons for his termination at a meeting that was held at the dog track. And even though there wasn't a requirement that he be entitled to notice, he did, in fact, get notice. So the issue for your determination, I believe, will be whether or not there is just cause under the agreements."

Yankee's counsel did not state specifically the issue for the arbitrator to decide in its posthearing brief.

[8] Yankee does not dispute the arbitrator's power to frame the submission, but asserts that counsel's *claims made* the submission a restricted one. This assertion is without merit.

[9] In his award, the arbitrator stated in a footnote to the submission: "From the evidence on the record, the Arbitrator finds that the Plainfield Pets Agreement was to have the same term, termination provisions, and other

The submission contained no language reserving explicit rights or conditioning the award on court review. We conclude that it was unrestricted. We now determine whether the award conforms to the submission.

The arbitrator found that Yankee had terminated the employment agreement with the plaintiff without cause and awarded back pay in the net amount of $40,228.30.[10]

conditions (except for duties and compensation) as were contained in the Yankee agreement. Therefore, this Arbitrator also finds that the Plainfield Pets Agreement could be terminated for cause, and that 'cause' under the Plainfield Pets Agreement has the same definition as the term 'cause' as used in the Yankee Agreement, which definition is set out in Section 9 of the Yankee Agreement."

[10] The arbitrator's award provides in relevant part: "Having heard the proofs and allegations of the parties, having reviewed and considered the evidence on the record, having given the evidence on the record its proper weight, and having made all proper credibility determinations, the Arbitrator finds as follows: THAT THE RESPONDENT EMPLOYER, CONNECTICUT YANKEE GREYHOUND RACING, INC., TERMINATED THE YANKEE AGREEMENT AND THE PLAINFIELD PETS AGREEMENT WITHOUT CAUSE AND THEREFORE TERMINATED BOTH OF THOSE AGREEMENTS IN VIOLATION OF THEIR TERMS AND CONDITIONS. THE ARBITRATOR THEREFORE AWARDS CLAIMANT EXLEY THE RELIEF SPECIFIED IN SECTION 7 OF THIS AWARD.

\* \* \*

"7. JUDGMENT AND AWARD/RELIEF AWARDED

"A. Lost Wages and Benefits. Based on the evidence on the record, the Arbitrator has determined that the Respondent shall pay Claimant Exley the following amount of back pay, which amount has been determined giving due consideration to Exley's interim earnings in mitigation of his contractual damages:

"Plainfield Pets Agreement—1/7/97—4/14/98

"66 weeks at $200 per week—$13,200.00

"Yankee Agreement—1/21/97—4/14/97

"12 weeks at $838.45 per week—$10,061.40

"Yankee Agreement—4/15/97—4/14/98

"52 weeks at 934.61 per week—$48,599.60

"TOTAL BACK PAY (PRIOR TO MITIGATION)—$71,861.00

"LESS:

"Unemployment Compensation (All In 1997)—$ 4,942.00

"Mashantucket Pequots—1997 Earnings—$17,524.00

"Mashantucket Pequots—1998 Earnings through 4/14/98—$8,869.10

"Mashantucket Pequots—1998 Holiday Pay—$297.60

We conclude that the award conforms to the submission.

Yankee also claims that the arbitrator exceeded his authority in issuing the award because he improperly imported the terms of the Yankee agreement into the Plainfield Pets agreement[11] and imposed liability on the defendant pursuant to the Plainfield Pets agreement.[12] We do not agree. "It is . . . the award rather than the finding and conclusions of fact [that] controls and, ordinarily, the memorandum of an arbitrator is irrelevant. *American Brass Co.* v. *Torrington Brass Workers' Union*, 141 Conn. 514, 522, 107 A.2d 255 [1954]; *Von Langendorff* v. *Riordan*, 147 Conn. 524, 527, 163 A.2d 100 [1960]." *Board of Education* v. *Local 818*, supra, 5 Conn. App. 641. Furthermore, "[i]f the submission is unrestricted, an arbitrator is not required to decide the issues presented according to law. . . . Thus, [w]here the submission does not otherwise state, the [arbitrator is] empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the [arbitrator] was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the [arbitrator's] decision of the legal questions involved. . . . *Metropolitan District Commission* v. *AFSCME, Council 4, Local 3713*, 35 Conn. App. 804, 808, 647 A.2d 755 (1994)." (Internal quotation marks omitted.) *JCV Investment Group, Inc.* v. *Manjoney*, 56 Conn. App. 320, 324–25, 742 A.2d 438 (2000).

---

"TOTAL INTERIM EARNINGS IN MITIGATION—$31,632.70

"TOTAL WAGE LOSS DAMAGES—$40,228.30"

[11] See footnote 9.

[12] Yankee also claims that it was improper for the court to refuse to vacate the entire award because a partial vacatur did not cure the arbitrator's improper exercise of authority and such partial relief worked an injustice to Yankee. Because we hold that the arbitrator's award conforms to the submission, there is no merit to this claim.

## II

The trial court vacated the "arbitration award, if any, in favor of [the plaintiff] against Plainfield Pets and the award in favor of [the plaintiff] against [Yankee] insofar as it finds an entitlement in [the plaintiff] growing out of the [Plainfield] Pets agreement." The plaintiff claims in his cross appeal that the court improperly failed to confirm the entire award because after determining that the submission was voluntary and unrestricted, the court improperly substituted its findings of fact and conclusions of law for those of the arbitrator. We agree.

### A

To the extent that the trial court vacated the award, if any, against Plainfield Pets, our review of the record discloses that (1) Plainfield Pets was not a party to the arbitration proceeding,[13] (2) the arbitrator did not render an award against Plainfield Pets and (3) Plainfield Pets was not a party to either of the applications that were filed in the Superior Court.

Even if we were to conclude that the arbitrator had rendered an award against Plainfield Pets, the trial court lacked jurisdiction to approve or vacate the award. "The jurisdiction of the trial court is limited to those parties expressly named in the action coming before it. . . . Until one is given notice of the actions or proceedings against him and is thereby given opportunity to appear and be heard, the court has no jurisdiction to proceed to judgment either for or against him even though it may have jurisdiction of the subject matter. One who is not served with process does not have the status of a party to the proceeding. . . . A court has no jurisdic-

---

[13] The arbitrator ruled that Yankee was "an appropriate party against which [the plaintiff] has standing to pursue his claims under the Plainfield Pets Agreement and that [the plaintiff's] failure to name Plainfield Pets Program, Inc., as a party respondent is not fatal to the pursuit of his claims under the Plainfield Pets agreement."

tion over persons who have not been made parties to the action before it." (Citation omitted; internal quotation marks omitted.) *Delio* v. *Earth Garden Florist, Inc.*, 28 Conn. App. 73, 77, 609 A.2d 1057 (1992). "[Parties] are not fungible, even if they are represented by the same attorney and have similar interests. The general rule is that one party has no standing to raise another's rights. See *State* v. *Williams*, 206 Conn. 203, 207, 536 A.2d 583 (1988); *Delio* v. *Earth Garden Florist, Inc.*, [supra, 78]. The [defendant] cannot assert the appellate rights of parties who have never done so themselves." *Sadloski* v. *Manchester*, 235 Conn. 637, 643, 668 A.2d 1314 (1995). Had the arbitrator rendered an award against Plainfield Pets, we would have reversed any trial court judgment approving or vacating the award against Plainfield Pets because it was not a party to the proceedings.

B

We next consider whether the trial court properly vacated the arbitrator's award against Yankee to the extent that the award grew out of the Plainfield Pets agreement. We find that in so doing, the trial court substituted its legal judgment for that of the arbitrator. Where the arbitration is voluntary and the submission is unrestricted, as the court concluded here, the award cannot be corrected for errors of fact or law. See *AFSCME, Council 15, Local 3153* v. *Newtown*, 49 Conn. App. 443, 447–48, 717 A.2d 759 (1998); *Greater Bridgeport Transit Dist.* v. *Amalgamated Transit Union, Local 1336*, 28 Conn App. 337, 343, 610 A.2d 1324 (1992). We reverse this part of the court's judgment.

The judgment is reversed in part on the plaintiff's cross appeal and the case is remanded with direction to render judgment granting the application to confirm the arbitration award in its entirety.

In this opinion the other judges concurred.