LOCAL 1042, COUNCIL 4, AFSCME, AFL-CIO *v.*
BOARD OF EDUCATION OF THE
CITY OF NORWALK
(AC 20890)

Foti, Schaller and Dupont, Js.

Argued June 5—officially released October 23, 2001

*Thomas W. Bucci,* for the appellant (plaintiff).

*Thomas N. Sullivan,* with whom, on the brief, was *Mark J. Sommaruga,* for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Local 1042, Council 4, American Federation of State, County and Municipal Employees, AFL-CIO, appeals from the judgment of the trial court rendered in favor of the defendant board of education of the city of Norwalk, denying the plaintiff's application to vacate an arbitration award and granting the defendant's motion to confirm the award. On appeal, the plaintiff claims that the court improperly concluded that the arbitration panel's decision in refusing to transfer Woody Cooper, the union member on whose behalf the plaintiff commenced the present action, to the head custodian position at Norwalk High School involved the interpretation of an ambiguous contract rather than the creation of a new job classification in excess of the panel's jurisdiction. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. Cooper was employed by the defendant as head custodian at the West Rocks Middle School. The plaintiff and the defendant were parties to a collective bargaining agreement in effect between July 1, 1992, and June 30, 1997. In January, 1996, the defendant announced a job opening for the position of head custodian at Norwalk High School. Cooper applied for the open position. The defendant considered Cooper's application as seeking a higher level position rather than a transfer to an equivalent position. Through the application process, the defendant ultimately selected another candidate to fill the open position. The plaintiff pursued available remedies through the defendant's grievance procedures, and the defendant denied the plaintiff's claim. The parties

submitted the issue to the state of Connecticut board of mediation and arbitration to resolve the dispute.

The issue as submitted to the arbitration panel was as follows: "Was the Contract violated when Woody Cooper was denied a transfer to Norwalk High School? If so, what shall be the remedy?" The defendant argued that the position to which Cooper applied was a promotion, and the decision to hire another person was based on consideration of the candidate's abilities and fitness for the position, as well as seniority. The defendant, therefore, needed to assess Cooper's qualifications even if Cooper occupied a similar position in another school. The defendant further argued that the plaintiff could not establish a practice of transferring employees on the basis of seniority. The plaintiff responded that the defendant's actions violated articles XIII and XXII of the collective bargaining agreement because others had bid for positions and were given transfers, and the defendant's practice had been to give priority transfers to those with more seniority.

The panel heard the matter on October 22, 1998. On June 17, 1999, the board issued its decision, concluding that "[t]he contract was not violated when Woody Cooper was denied a transfer to Norwalk High School." In its discussion, the panel reasoned that "[t]he Head Custodian's position at Norwalk High School was considered a promotional opportunity because the work involved a higher degree of responsibility and supervision of a greater number of employees than a normal Head Custodian at either an elementary or middle school is used to supervising. This case was not merely a transfer of a Head Custodian from one school to another, as the Union argued. The Head Custodian's job at Norwalk High School is more demanding and requires a great deal of skill and managerial responsibilities, most of which were lacking by [Cooper]. The background of the successful candidate contained much

experience in managing and supervising a large number of people." The plaintiff then filed with the court an application to vacate the award, and the defendant thereafter filed a motion to confirm the award.

Before the court, the plaintiff argued that the collective bargaining agreement did not include a separate job classification for head custodian at Norwalk High School. The court acknowledged that the arbitrators had concluded, on the basis of the collective bargaining agreement, that the Norwalk High School position constituted a promotion. The court considered that the collective bargaining agreement provided for an additional stipend for the head custodian position and, although the agreement mentions both promotions and transfers, the agreement does not define those terms. The court concluded that "the issue is clearly one involving the interpretation of an ambiguous contract. This is a factual issue that the court cannot disturb." We conclude that the court properly confirmed the arbitration award.

To apply the appropriate standard of review for the present case, we must first determine whether the submission was restricted or unrestricted. See *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 228, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000). "In determining whether a submission is unrestricted, we look at the authority of the arbitrator. The authority of the arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of such qualifications, an agreement is unrestricted. . . . The arbitration clause in a contract constitutes the written submission to arbitration. . . . If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause

in the contract is a written submission to arbitration." (Citations omitted; internal quotation marks omitted.) Id., 229. As was the case in *Exley*, the collective bargaining agreement between the plaintiff and defendant, in article IX, provides for a detailed grievance procedure that includes the arbitration of disputes, but without language "restricting the breadth of issues, reserving explicit rights or conditioning the award on court review." Id., 230. We therefore conclude that the agreement presently before us constitutes an unrestricted submission to arbitration.

"In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission. . . . A challenge of the arbitrator's authority is limited to a comparison of the award to the submission. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . Every reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." (Citations omitted; internal quotation marks omitted.) *Bic Pen Corp.* v. *Local No. 134*, 183 Conn. 579, 584–85, 440 A.2d 774 (1981).

"[O]ur [j]udicial review of arbitral decisions is narrowly confined. When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the

parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . .

"One of the principal reasons for this deference is that the scope of our review is expressly limited by [General Statutes] § 52-418[1] . . . and, sometimes, by the terms of the parties' agreement. . . . We have stated on numerous occasions that arbitration is a creature of contract [whereby the parties themselves, by agreement, define the powers of the arbitrators]. . . . Therefore, it is the arbitrator's judgment that was bargained for and contracted for by the parties, and we do not substitute our own judgment merely because our interpretation of the agreement or contract at issue might differ from that of the arbitrator.

---

[1] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds . . . (4) . . . the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

"These well established principles governing consensual arbitration are subject to certain exceptions. Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418. . . .

"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Citations omitted; internal quotation marks omitted.) *Preston* v. *State Division of Criminal Justice*, 60 Conn. App. 853, 860–62, 761 A.2d 778 (2000), cert. denied, 255 Conn. 936, 767 A.2d 1212 (2001); see also *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 119, 676 A.2d 825 (1996).

In the present case, the plaintiff submitted the following issue to the panel: "Was the Contract violated when Woody Cooper was denied a transfer to Norwalk High School? If so, what shall be the remedy?" In reviewing the board's conclusion that the defendant did not violate the collective bargaining agreement, the court reasoned that the interaction of several articles in that agreement justified the conclusion that the agreement was ambiguous and that the panel properly resolved the ambiguity. Specifically, the court referred to article IX, detailing

the grievance procedure;[2] article XII, pertaining to seniority;[3] and article XIII, pertaining to the positing of job openings.[4] Having reviewed the relevant articles in the collective bargaining agreement, we conclude that the plaintiff has failed to carry its burden to establish that the agreement is not ambiguous and, thus, that the award does not conform to the submission. See *Bic Pen Corp.* v. *Local No. 134*, supra, 183 Conn. 584–85.

The court concluded that the agreement was ambiguous as to whether the senior high school and middle school positions were equivalent. "Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . ." (Internal quotation marks omitted.) *Levine* v. *Advest, Inc.*, 244 Conn. 732, 746, 714 A.2d 649 (1998). Furthermore, "[a]ny ambiguity in an agreement must flow from the language used and not from one party's subjective perception of the terms." *Continental Ins. Co.* v. *Connecticut National Gas Corp.*, 5 Conn. App. 53, 58, 497 A.2d 54 (1985). We therefore review the relevant provisions of the collective bargaining agreement to ascertain whether the provisions are unambiguous.

Article VII[5] describes "head custodian" as a "position," which appears to support the plaintiff's position.

---

[2] Article IX of the collective bargaining agreement provides in relevant part: "The arbitrators shall not have any power to add to, subtract from, vary, modify or amend the terms of this Agreement. . . ."

[3] Article XII of the collective bargaining agreement provides in relevant part: "When promotions are made to other than supervisory positions, they shall be made on the basis of ability, fitness, and seniority of the employee: No promotion will be made if the employee applying does not meet the minimum qualifications. . . ."

[4] Article XIII of the collective bargaining agreement provides: "Bargaining unit employees shall not be entitled, as a matter of right, to transfer within grade more than once per school year, this shall not apply to promotional opportunities."

[5] Article VII, § H, of the collective bargaining agreement provides in relevant part: "Head custodians shall be compensated annually with the following stipend for extra services consistent with proprietary performance and

Article VII, § H, however, provides that head custodians receive an additional stipend "for extra services consistent with proprietary performance and responsibilities of the position . . . ." It then distinguishes between senior high school and middle school custodians, and assigns a larger stipend to the former. The article may be construed as acknowledging that the positions are not comparable and attributing greater responsibilities to the former, commensurate with the stipend.

Article IX provides that arbitrators may not modify the terms of the collective bargaining agreement. That presupposes that there is an unambiguous agreement to modify. Article XII delineates the requirements for a promotion, namely, that a promotion may be granted on the basis of an individual's fitness for the position and that individual's seniority in the organization. Article XIII mandates that individuals may transfer only once per year, but that rule concerning transfers does not apply to promotions. Finally, article XXII adopts previous established practices into the agreement.

The panel heard evidence as to whether the head custodian positions at the senior high school and the middle school were equivalent. The panel concluded that the requirements of each position were not identical and, thus, the senior high school head custodian position constituted a promotion from the middle school head custodian position. The plaintiff has not sustained its burden of overcoming the presumptive

---

responsibilities of the position, effective July 1, 1992.

"Senior High School $1,902 per year above regular salary

"Middle School $1,426 per year above regular salary . . . ."

Section H also provides for incremental increases for the positions. Effective July 1, 1995, a senior high school head custodian would be paid a stipend of $2140 per annum, a middle school head custodian would receive $1604 per annum. Effective July 1, 1996, a senior high school head custodian would be paid a stipend of $2225 per annum, a middle school head custodian would receive $1668 per annum.

validity of that conclusion. See *Bic Pen Corp.* v. *Local No. 134*, supra, 183 Conn. 585.

The plaintiff also sought to establish that transfers of the type sought by Cooper in the present case were an established practice pursuant to article XXII.[6] The panel found that the high school position was "not merely a transfer . . . ." We conclude that the plaintiff has failed to overcome the presumption of validity as to the panel's determination on that issue. See id.

The plaintiff has not established that the award did not conform to the submission to the panel; see id.; and that the panel exceeded its power. We conclude that the court's judgment confirming the award did not violate § 52-418 and was in accord with the deference that should be accorded to the decisions of arbitration panels. See *Preston* v. *State Division of Criminal Justice*, supra, 60 Conn. App. 861.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Article XXII of the parties' collective bargaining agreement provides: "Previous benefits mutually agreed to as established practices heretofore and have not been superseded by the provisions of this Agreement, shall be part of this Agreement."