[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before the court is a petition to vacate an arbitration award and a counterclaim petition to confirm the award. On April 18, 2002, the state board of mediation and arbitration made an award in the matter of Stop 
Shop Supermarket Company (Stop Shop) and International Brotherhood of Teamsters, Local 443 (the union), in favor of the union. Stop Shop brought the petition to vacate the arbitration award on May 17, 2002.
On June 11, 2002, the union filed an answer. It also filed a counterclaim to confirm the arbitration award.
The arbitration award concerns a grievance brought by the union, claiming that Stop Shop violated the collective bargaining agreement. The union represented one of its members, Louis Richardson, claiming that Stop Shop violated article VII of the collective bargaining agreement entitled discharge and discipline. Richardson, a ten year employee of Stop Shop, was caught with approximately five dollars of merchandise, secreted in his lunch box as he left work, without paying for the items. Richardson was then escorted to an office where he met with Stop Shop supervisory personnel. In that meeting room, Richardson signed two documents: in the first, he acknowledged that he took two bottles of Dawn Power Plus Soap at leaving time; and, in the second he resigned from is employment at Stop Shop and waived his union representation. Two days later, the grievance was filed, claiming, inter alia, that the resignation was not voluntary, that he was not in his right state of mind at the time and that he was under duress at the time. While in that room, Richardson was told he could resign rather than be terminated. The arbitrators addressed this issue indirectly in writing, "[t]he Panel feels that suspension was a more appropriate discipline than either termination or resignation. . . ." The panel treated the resignation as a form of discipline, since Richardson was told that he would be terminated if he did not take up the offer of resignation. In sum, the union's claim regarding the lack of voluntariness of the resignation is that it amounted to constructive discharge-although they did not attach that nomenclature in the arbitration or hearing before this court. "Constructive discharge occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign." Neale v. Dillon, 534 F. Sup. 1381, 1390, aff'd, 714 F.2d 116 (2d Cir. 1982). See generally, annot., Constructive Discharge — Title VII, 55 A.L.R. Fed. 418." Seery v. Yale-New HavenHospital, 17 Conn. App. 532, 540, 554 A.2d 757 (1989). In this instance, Richardson was left with no ability to continue his employment and so felt forced to resign the union argues. Since the panel treated it as a form of discipline, inferentially they must have concluded that Richardson was constructively discharged.". . . Through the use of constructive discharge, [however] the law recognizes that an employee's `voluntary' resignation may be, in reality, a dismissal by the employer." (Citation omitted)." Appleton v. Board of Education, 53 Conn. App. 252,261, 730 A.2d 88 (1999).
The collective bargaining agreement provides that an employer may discharge or suspend an employee, without warning notice, for CT Page 10121 dishonesty, which is the offense at play here. The grievance here was filed under the collective bargaining agreement which defines a grievance an any controversy, complaint, misunderstanding, or dispute." Surely, the claims of Richardson brought by the union here, including his resignation under duress come under this definition of a grievance and were properly before the panel as part of the unrestricted question. Cf, Lathrop v.Town of East Hampton, No. CV 97-0083839 (Middlesex, Parker, J.) (May 23, 2001) 2001 Ct. Sup. 6904.
Stop Shop also contends that the arbitration award should be vacated because the arbitrators violated General Statutes § 52-418 (a)(4)[1]
by exceeding their power and because the arbitration award is inherently inconsistent with the collective bargaining agreement.
The standards for determining whether the arbitrators have exceeded their powers is well settled. "In deciding whether an arbitrator has exceeded his power, [the court] need only examine the submission and the award to determine whether the award conforms to the submission. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . Every reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission. (Citations omitted; internal quotation marks omitted.) Bic Pen Corp. v.Local No. 134, 183 Conn. 579, 584-85, 440 A.2d 774 (1981).
"[O]ur [j]udicial review of arbitral decisions is narrowly confined. When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .
"These well established principles governing consensual arbitration are subject to certain exceptions. Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating an CT Page 10122 award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of §52-418. . . ." (Internal quotation marks omitted.) Local1042, Council 4, AFSCME, AFL-CIO v. Board of Education,66 Conn. App. 457, 461-63, 784 A.2d 1018 (2001).
The court must first determine whether the submission was unrestricted. "The arbitration clause in a contract constitutes the written submission to arbitration. Vail v. American Way Homes, Inc.,181 Conn. 449, 451, 435 A.2d 993 (1980)." (Internal quotation marks omitted.) Exley v. Connecticut Yankee Greyhound Racing, Inc.,59 Conn. App. 224, 229, 755 A.2d 990, cert. denied, 254 Conn. 939,761 A.2d 760 (2000). In the present case, the collective bargaining agreement contains the arbitration clause in article VIII, entitled grievance procedure. Article VIII provides that arbitration is the final step in a three-step grievance process. The collective bargaining agreement specifically provides that "[i]f no satisfactory settlement can be agreed upon, the matter shall be referred to the Connecticut State Board [of] Mediation Arbitration. . . ."
"If the submission does not contain limiting or conditional language, then the submission is unrestricted." (Internal quotation marks omitted.)JCV Investment Group, Inc. v. Manjoney, 56 Conn. App. 320, 324,742 A.2d 438 (2000). Given that no conditional or limiting language is contained within the submission, this court finds that the submission was unrestricted.
Because the submission was unrestricted, the court employs the narrow review recited above, comparing the submission to the award. The court finds that the award conformed to the submission. The award in the present case was that Richardson "shall be immediately reinstated; the period between May 22, 2001 and his reinstatement shall be considered as suspension time. He shall not lose seniority earned prior to May 22, 2001, and shall receive Health and Welfare Fund payments per article XIX (2), as well as Pension Fund payments per article XX (1) both for four weeks, forty (40) hours per week per the collective bargaining agreement." The collective bargaining agreement, in turn, provides that "any grievance arising between [Stop Shop] and the Union or an employee represented by the Union shall be settled" by use of the three step process, including arbitration. The collective bargaining agreement broadly defines a grievance as "any controversy, complaint, misunderstanding or dispute" arising between the employer and employee. The present case concerns a disagreement on how Richardson, who is represented by the union, was treated by Stop Shop when he was caught stealing from Stop Shop. Accordingly, because the arbitrators decided a CT Page 10123 resolution to the issue of how Richardson was treated by Stop Shop, the award conforms to the submission.
The court also finds that the three exceptions to this narrow review are not present in this case. The award in the present case does not rule upon the constitutionality of a statute. Also, Stop Shop does not argue or point to any contravened public policy. As for the other provisions of § 52-418; namely that the award was procured by corruption, fraud or undue means, that there was evident partiality or corruption by the arbitrators, or that the arbitrators wrongly refused to postpone the arbitration hearing; Stop Shop has neither argued nor shown that the arbitrators engaged in any wrongdoing. Accordingly, the court finds that the award may not be vacated for these reasons.
Stop Shop has also argued that the award is inherently inconsistent with the collective bargaining agreement. "[I]n limited circumstances a court will broaden its review of an arbitrator's decision: These circumstances are where a party claims that the award, as issued, is inherently inconsistent with the underlying collective bargaining agreement. . . . [Board of Education v. Local 818, 5 Conn. App. 636,640, 502 A.2d 426 (1985)]. In such a case, [the] court will review the award . . . to determine whether it draws its essence from the collective bargaining agreement. Id., quoting United Steelworkers v. EnterpriseWheel Car Corporation, [363 U.S. 593, 597, 80 S.Ct. 1358,4 L.Ed.2d 1424
(1960)]." (Internal quotation marks omitted.) State v. AFSCME,13 Conn. App. 461, 463-64, 537 A.2d 517 (1988). This review, however, is not expansive. "It must be emphasized . . . that merely claiming inconsistency between the agreement and the award will not trigger judicial examination of the merits of the arbitration award. Rather, in the face of such a claimed inconsistency, [a] court will review the awardonly to determine whether it draws its essence from the collective bargaining agreement." (Emphasis added; internal quotation marks omitted.) Board of Education v. Local 818, 5 Conn. App. 636, 640,502 A.2d 426 (1985).
Because Stop Shop has claimed that the award is inherently inconsistent with the collective bargaining agreement, the court shall broaden its review. The collective bargaining agreement, article VII, entitled discharge or suspensions, provides that "[t]he Employer shall not discharge or suspend any employee without just cause [without two warnings] except that no warning notice need be given to an employee before he is discharged or suspended if the cause of the discharge or suspension is dishonesty, drunkenness, recklessness . . ., the carrying of unauthorized passengers, refusal of a work related order or other serious acts." (Emphasis in original.) In its report, the arbitrators cited this provision as a basis for its decision. It also found that CT Page 10124 Richardson had unlawfully stolen goods from Stop Shop, an act that the arbitrators indicate is an offense that involves dishonesty.
The court notes that the collective bargaining agreement provides that an employee may be discharged or suspended for the enumerated offenses. The award found that Richardson was to be considered to be suspended under the collective bargaining agreement and reinstated. Given that the collective bargaining agreement does not provide solely for automatic dismissal but also allows for suspension, the court finds that the award is not inherently inconsistent with the collective bargaining agreement. Accordingly, the court shall not vacate the arbitration award on this ground.
 II
The union has filed a counterclaim to confirm the arbitration award. An application to confirm an arbitration award is governed by General Statutes § 52-417. "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419." As discussed in Part I of this memorandum, the award does not violate § 52-418. General Statutes § 52-419 provides in relevant part that "[u]pon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order modifying or correcting the award. . . ." No party has made an application to modify or correct the award. Accordingly, the court shall confirm the arbitration award.
The union has also requested that the court award Richardson lost wages from April 22, 2002, the date of the award, to his reinstatement. The union has also requested attorney fees. The union claims such remedies pursuant to General Statues § 31-72. Such a claim is not properly before the court.
Section 31-72 provides in relevant part that "where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole . . . such employee or labor organization may recover, ina civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court. . . ." (Emphasis added.) The Connecticut Supreme Court has found that "proceedings brought . . . to confirm, modify or vacate arbitration awards CT Page 10125 are not civil actions within the meaning of title 52"; Waterbury v.Waterbury Police Union, 176 Conn. 401, 408, 407 A.2d 1013 (1979); and, therefore, § 31-72 cannot be utilized in the present case.[2]
Accordingly, the court will not grant an award of lost wages or attorney fees.
For the reasons herein stated, the court denies the petition to vacate the arbitration award. For the reasons herein stated, the court grants the counterclaim petition to confirm the arbitration award but the court does not award lost wages or attorney fees.
 Lynda B. Munro Judge of the Superior Court